1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   BARBARA ANN J.,                         Case No.:  3:19-cv-00590-RBM

12                              Plaintiff,
                                             **ORDER AFFIRMING DECISION OF**
13   v.                                      **COMMISSIONER OR SOCIAL**
                                             **SECURITY**
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                               Defendant.
16
                                             **[Docs. 14, 17, 18.]**
17

18                    I.    **INTRODUCTION**

19        Plaintiff Barbara Ann J. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C §§

20   405(g), 1383(c)(3) seeking judicial review of the final decision of the Commissioner of the

21   Social Security Administration ("SSA") ("Defendant" or "Commissioner") denying

22   Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income

23   under Titles II and XVI of the Social Security Act ("the Act").  (Doc. 1.)

24        Before the Court are: (1) Plaintiff's Merits Brief, seeking remand to the SSA for

25   further proceedings (Doc. 14); Defendant's Cross-Motion for Summary Judgment and

26   Opposition to Plaintiff's Merits Brief (Doc. 17); and Plaintiff's Reply to Defendant's

27   Opposition to Plaintiff's Merits Brief (Doc. 18).

28   / / /

                                             1

The parties consented to Magistrate Judge Jurisdiction.  (Doc. 16; Gen. Or. 707.)  After a thorough review of the papers on file, the Administrative Record ("AR"), the facts and applicable law, the decision of the Commissioner is **AFFIRMED**.

## II.    BACKGROUND & PROCEDURAL HISTORY

In October 2011, Plaintiff sustained an injury to the low back while employed as a clinical social worker.  (AR,[1] at 37, 286, 1078.)  The workplace incident occurred in Plaintiff's cubicle while Plaintiff talked on the phone with a client.  (AR, at 40-41.)  Unbeknownst to Plaintiff, a malfunctioning desk drawer in the cubicle became ajar while she talked on the phone.  (AR, at 40-41.)  Plaintiff tripped over the drawer and it caused her to fall backwards and strike the cement floor.  (*Id.*)

On January 30, 2015, Plaintiff filed an application for disability and disability insurance under Title II of the Act.  (AR, at 37, 92, 283.)  Plaintiff's alleged onset of disability is October 13, 2014, which is the last date Plaintiff worked.  (*Id.*)  Plaintiff alleges disability due to diabetes, high blood pressure, high cholesterol, lumbar sprain and degenerative spine disease.[2]  (AR, at 17, 20, 275.)  As of the onset date, Plaintiff's back-related diagnoses include lumbar spondylosis, degenerative disease of the spine with radiculopathy and lumbar sprain/strain.  (AR, at 1066, 1071.)  Plaintiff's most persistent and chief complaint is low back pain.  (AR, at 40.)  Plaintiff is currently sixty-six years of age.  (AR, at 283.)

The SSA denied Plaintiff's claim initially and upon reconsideration.  (AR, at 93-96, 101-105.)  Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").  (AR, at 107-108.)  At the November 9, 2017 hearing, Plaintiff appeared with counsel.  (AR, at 32-69.)  The ALJ elicited testimony from Plaintiff and Raymond E. Cestar, a vocational expert ("VE").  (*Id.*)

/ / /

---

[1] All AR citations refer to the number on the bottom right-hand corner of the page, rather than page numbers assigned by CM/ECF.

[2] Plaintiff subsequently alleged affective disorder as an additional impairment.  (AR, at 86.)

2

On January 31, 2018, the ALJ issued a written decision finding Plaintiff was not disabled as defined in the Act. (AR, at 12-24.) On March 20, 2018, Plaintiff sought review of the decision by the Appeals Council. (AR, at 1-6.) On January 24, 2019, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision became the final decision of the Commissioner pursuant to 42 U.S.C. § 405(h). (*Id.*)

## III. THE ALJ'S FINDINGS

In the decision, the ALJ determined Plaintiff met the insured status requirements of the Act through September 30, 2019. (AR, at 17.) The ALJ then followed the five-step sequential evaluation process to determine whether Plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 13, 2014. (AR, at 17.)

At step two, the ALJ found Plaintiff suffers from the following severe impairments: history of bilateral knee replacement, lumbar spondylosis/degenerative disease of the spine, and back and hip pain disorders. (*Id.*) The ALJ found Plaintiff's diabetes, hypertension, high cholesterol and mental impairments as not severe. (*Id.* at 17-18.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR, at 19.)

Next, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff has the capacity to:

> lift and carry [twenty] pounds occasionally and [ten] pounds frequently, stand or walk for [two] hours in an [eight] hour day, and sit for [six] hours in an [eight] hour day. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can only rarely climb ramps or stairs, and never climb ladders, ropes or scaffolds. The claimant can occasionally work at heights or walk on uneven terrain. The claimant requires a cane for ambulation more than 100 feet.

(AR, at 20.)

3

For purposes of the step four analysis, the ALJ gave "significant" weight to a medical opinion from an orthopedic consultative examiner, Jeff Altman, M.D. ("Dr. Altman"), finding it "consistent with the overall treatment notes, physical examinations, diagnostic testing, medical management, and her overall activities of daily living." (AR, at 22.) The ALJ assigned "substantial" weight to opinions of SSA disability examiners T. Do, M.D. ("Dr. Do"), and K. Vu, D.O. ("Dr. Vu"), finding the opinions "generally consistent with the overall medical evidence of record." (*Id.*) As to various Workers' Compensation opinions, the ALJ stated:

> the record reflected earlier Worker's Compensation opinions at various exhibits (Ex. 1F & 33F). The undersigned gives some partial weight to earlier Worker's Compensation opinions that allowed modified work with lifting limitations of [five] pounds and at Exhibit 33F (submitted post-hearing), but only to [the] extent that assessed limitations are reasonably consistent with residual functional capacity. In addition, there also are other Worker's Compensation opinions at Exhibits 16F, 22F & 27F that indicated some degree of ongoing limitations, but the undersigned gives greater weight to SSA disability opinions in the file.

(*Id.*)

Overall, the ALJ found the medical evidence and Plaintiff's admitted activities do not support Plaintiff's allegations of a totally debilitating impairment. (AR, at 23.) The ALJ's step four analysis determined Plaintiff has the RFC to perform past relevant work as a clinical social worker, social service aide and eligibility worker. (*Id.*) Because the ALJ found Plaintiff not disabled at step four, the ALJ did not analyze step five. *See* 20 C.F.R. § 404.1520(a)(4). In sum, the ALJ found Plaintiff has not been under a disability, as defined in the Act, from October 13, 2014, through the date of his decision. (AR, at 24.)

## IV. ISSUES IN DISPUTE

As set forth in the parties' briefing, the disputed issues are as follows:

1. Whether the ALJ properly considered medical opinion evidence concerning Plaintiff's physical limitations (Doc. 14, at 8; Doc. 17, at 4); and

2. Whether the ALJ properly evaluated Plaintiff's subjective claims of impairment (Doc. 14, at 12; Doc. 17, at 8).

4

# V.    STANDARD OF REVIEW

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court.  42 U.S.C. § 405(g).  "As with other agency decisions, federal court review of social security decisions is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)).  Substantial evidence means "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  In reviewing whether the ALJ's decision is supported by substantial evidence, the Court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).  When the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Stated differently, when the evidence "can reasonably support either affirming or reversing a decision, [the Court] may not substitute [its] judgment for that of the [ALJ]"; rather, the Court only reviews "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

5

# VI. DISCUSSION

Plaintiff contends the ALJ's decision is based on legal error for two reasons: (1) the ALJ failed to set forth any specific, legitimate reasons for rejecting the opinions of Plaintiff's treating and examining sources concerning Plaintiff's physical limitations, including the opinions of William Tontz, Jr., M.D. ("Dr. Tonz"), Blake Thompson, M.D. ("Dr. Thompson"), William Leroy Wilson, M.D. ("Dr. Wilson") and Vladimir Kaye, M.D. ("Dr. Kaye"); and (2) the ALJ improperly rejected Plaintiff's subjective allegations of impairment. (Doc. 14, at 8-14.) Defendant counters that the ALJ's decision should be affirmed because: (1) the ALJ provided specific and legitimate reasons for according the greatest weight to Dr. Altman's medical opinion; and (2) the ALJ properly discounted Plaintiff's subjective allegations of disability by relying upon objective medical evidence, Plaintiff's conservative treatment and Plaintiff's reported activities. (Doc. 17, at 3-10.) In light of the foregoing, the Court addresses the underlying evidence of record.

## A. Evidence of Record

### i. Chronology of Medical Evidence

On November 8, 2013, Plaintiff underwent a comprehensive orthopedic spinal evaluation with Dr. Tontz for Workers' Compensation. (AR, at 372, 374.) Diagnostic impressions revealed "[a]xial low back pain with underlying preexistent lumbar disc degeneration, symptomatic." (*Id.* at 374.) The physical exam noted an antalgic gait and limited range of motion in the lumbar spine. (*Id.* at 373.) Based on Plaintiff's subjective complaints and objective findings, Dr. Tontz found Plaintiff "reasonably temporarily partially disabled with a [five] pound lifting limit and no driving of commercial vehicles." (*Id.* at 374.) Dr. Tontz recommended nonsurgical management. (*Id.*)

On December 3, 2013, Plaintiff underwent a comprehensive medical evaluation with Dr. Thompson. (AR, at 406-415.) Plaintiff's reported medications included Vicodin, Flexeril, ibuprofen, Lantis, NovoLog, Simvastatin, Metformin, Aspirin, Cozaar and HCTZ. (*Id.* at 410.) Plaintiff reported constant low back pain, rating it an eight out of ten on the pain scale and noted increased pain with "walking, bending, stooping, sitting, standing and

6

lifting [and] . . . decreased pain with massage, aquatherapy, medications, rest and changing position often." (*Id.*) Observation notes state Plaintiff was in no acute distress, but she walked with an antalgic gait, exhibited difficulty in a straight-leg raise test as well as decreased and guarded range of motion in the lumbar spine. (*Id.* at 411.) Dr. Thompson diagnosed Plaintiff with lumbosacral sprain/strain, lumbar degenerative disc disease, right-sided radiculopathy and sacral dysfunction with pelvic obliquity. (*Id.* at 413-414.) Dr. Thompson reviewed Plaintiff's current work status and the limitations imposed by Dr. Tontz and subsequently opined Plaintiff's disability status remained permanent and stationary. (*Id.* at 410, 414.) In January 2014, Dr. Thompson treated Plaintiff with lumbar epidural injections, wherein Dr. Thompson advised Plaintiff "to anticipate temporary elevated blood sugar as a result of the cortisone injection . . ." (AR, at 405.)

A few months later at diabetes treatment in June 2014, Plaintiff reported to "exercise[] 100 minutes per week at a moderate to strenuous level." (AR, at 57.)

In September 2014, Plaintiff consulted with Dr. Wilson for pain management. (AR, at 498.) Dr. Wilson diagnosed Plaintiff with lumbar spondylosis, degenerative disc disease, lumbar or thoracic radiculopathy and lumbar sprain/strain. (*Id.*) Dr. Wilson recommended Plaintiff to be "restricted from ambulating without the assistance of [a] walker or other assistive device, from driving and from bending or stooping." (*Id.* at 499.) One month later, Dr. Wilson opined Plaintiff reached maximum medical improvement and had a permanent and stationary disability status. (*Id.* at 637.) Dr. Wilson subsequently restricted Plaintiff from lifting over twenty pounds, bending or stooping, as well as requiring Plaintiff to change positions (i.e., from sitting to standing) for five to ten minutes every hour. (*Id.* at 632.) Dr. Wilson referred Plaintiff to physical therapy wherein Plaintiff reported "constant debilitating pain" and difficulties associated with "standing, sitting, mobility, lifting, dressing, bathing, [and] household chores . . ." (AR, at 648.)

On March 26, 2015, Dr. Kaye performed a qualified medical examination ("QME") for Workers' Compensation. (AR, at 717-726.) Plaintiff reported "[c]onstant moderate low back pain" which worsened with "exertion, exercise, sitting, bending, twisting, and

lifting [ten] pounds." (*Id.* at 718-719.) However, Plaintiff reported relief with "ice and heat (temporarily), cognitive behavioral therapy, acupuncture therapy, chiropractic therapy, and [an] H-wave machine . . ." (*Id.*) Regarding daily activities, Plaintiff reported: moderate-to-severe interference with bathing and dressing; severe interference with typing and writing; severe interference with doing laundry, getting in and out of bed, standing, sitting, walking, climbing stairs, running, twisting, carrying and pushing; and severe interference with driving. (*Id.* at 721.) Dr. Kaye opined Plaintiff is able to return to work with the following restrictions:

> limit activities involving standing, walking, sitting, climbing, forward bending, kneeling, crawling, and twisting to no more than [one to two] hours a day . . . limit activities involving grasping, pushing, and pulling to no more than [two to four] hours a day . . . [and] avoid lifting items that weigh more than [one] to [five] pounds at a height of [three to six] feet for no more than [one] hour per day.

(AR, at 723.)

In April 2015, Dr. Do, a non-examining SSA physician, found Plaintiff's subjective complaints disproportionate to objective medical findings and noted Plaintiff's condition is satisfactorily controlled with treatment. (AR, at 75.) Dr. Do opined Plaintiff can lift twenty pounds occasionally, ten pounds frequently, stand and/or walk (with normal breaks) for six hours in an eight-hour day and sit (with normal breaks) for six hours in an eight-hour day. (*Id.*) Dr. Do concluded Plaintiff's RFC permits past relevant work. (AR, at 77.)

Subsequent treatment and examination notes from 2015 document Plaintiff's level of function. At diabetes treatment in April 2015, Plaintiff reported "[s]he has been exercising and trying to lose weight and doing well so far." (AR, at 940.) At pain management in May 2015, Plaintiff reported exercising three days per week. (AR, at 707.) In June 2015, Plaintiff underwent an SSA psychiatric evaluation with Mounir Soliman, M.D. ("Dr. Soliman") (AR, at 710-716.) Dr. Soliman observed Plaintiff had a normal gait, but Plaintiff exhibited difficulty sitting as she changed positions several times during the exam. (AR, at 711.) Plaintiff's reported daily activities include cooking, cleaning, shopping/errands and handling personal hygiene and finances. (*Id.* at 713.)

8

In July 2015, SSA disability examiner, Dr. Vu, reconsidered the SSA disability determination. (AR, 80-91.) Dr. Vu assessed an RFC consistent with Dr. Do and concluded Plaintiff may return to work. (AR, at 87-90.)

Plaintiff visited Dr. Wilson in March 2017 for a pain management re-evaluation, chiefly complaining of low back pain. (AR, at 1803-1807.) Plaintiff reported relief from "rest, lying down, heat, ice, exercise, thinking about something else, [and] massage." (AR, at 1803.) Dr. Wilson prescribed physical therapy for four weeks. (AR, at 1806-1807; 1814.) One month later at the initial exam for physical therapy, Plaintiff chiefly complained of low back pain and indicated neither ice, heat packs nor the H-wave machine relieved her symptoms. (AR, at 1816.) Plaintiff reported being able to cook a meal and do laundry. (*Id.*) Overall, Plaintiff demonstrated poor tolerance to strengthening tasks due to pain and had difficulty sitting/standing for more than three minutes at a time. (AR, at 1824, 1834.) Dr. Wilson subsequently recommended aqua therapy. (AR, at 2004.) At aqua therapy, Plaintiff consistently reported pain and limitations with activities of daily living such as dressing, showering, cooking and cleaning. (AR, at 2005-2016.)

In September 2017, Plaintiff presented to Dr. Altman for a consultative orthopedic evaluation. (AR, at 2018-2030.) Plaintiff chiefly complained of back and hip pain and stated "overall, her pain never goes away." (AR, at 2025-2026.) Dr. Altman noted Plaintiff moved sluggishly with a walker, but sat comfortably in a chair without tilt and was able to "rise from a sitting and supine position without difficulty." (AR, at 2027.) Dr. Altman noted Plaintiff had normal neck and shoulder findings, full strength in the lower extremities and tenderness in the thoracolumbar spine. (AR, at 2027, 2029.) As for the functional assessment, Dr. Altman opined Plaintiff is able to:

> lift and carry [twenty] pounds occasionally and [ten] pounds frequently. She can stand and walk two hours out of an eight hour workday. She can sit six hours out of an eight hour workday . . . [Plaintiff] is able to ambulate without the use of an assistive device for short distance; greater than 100 feet, [Plaintiff] would need assistive device.

(AR, at 2030.)

ii.    Hearing Testimony

The hearing before the ALJ commenced on November 9, 2017.  (AR, at 32-69.)
Plaintiff testified her most persistent medical issue is back pain, which Plaintiff manages
by using an H-wave machine for forty-five-minute sessions three to four times per day and
applying six to seven doses of Icy Hot per day.  (AR, at 40, 43-44, 51-52.)

As to daily activities, Plaintiff testified she does not cook meals, wash dishes or
clean.  (AR, at 47, 57, 60.)  When Plaintiff drives, she takes rest breaks.  (AR, at 47, 57.)
After only twenty minutes at the hearing, Plaintiff requested to stand and testified to
experiencing a sharp, burning sensation in her lower back.  (AR, at 48-49.)  Plaintiff uses
a cane to ambulate and can only lift five pounds when she stands without a cane.  (AR, at
53-54, 56.)  Plaintiff shops at the grocery store once a month with her husband, but she
uses an electric cart.  (AR, 54-55.)

The ALJ asked Plaintiff about the delay between the 2011 workplace incident and
the alleged onset of disability in 2014.  (AR, at 37.)  Plaintiff testified the post-incident
epidural injection enabled her to work for some time until the pain resurfaced.  (*Id.*)
According to Plaintiff, the first injection caused her blood sugar to raise significantly.  (*Id.*)
Plaintiff stated she received a reduced dosage for the second injection and did not achieve
the same level of relief.  (*Id.*)  Although pain medication offers Plaintiff relief, Plaintiff
testified the medicine causes side effects that are worse than the pain control such as rashes,
upset stomach and vomiting.  (AR, at 50.)

Finally, the ALJ presented the VE with a range of vocational profiles/limitations to
determine a hypothetical person's ability to perform past relevant work.  (AR, at 64-68.)
One hypothetical scenario assumed functional limitations akin to Dr. Altman's
recommendations and the VE opined such person could perform past work as a clinical
social worker and eligibility worker but not as a social service assistant.  (AR, at 65-66.)

**B.    The ALJ's Consideration of Medical Opinion Evidence**

Plaintiff contends the ALJ's RFC determination is not supported by substantial
evidence because it is contradicted by the opinions of Drs. Tontz, Thompson, Wilson and

10

1    Kaye, which Plaintiff alleges the ALJ did not properly weigh. (Doc. 14, at 8-9.)
2    Specifically, Plaintiff argues the ALJ summarily and vaguely rejected these opinions
3    "without any discussion of their findings, without identifying the weight accorded to the
4    opinions, and without setting forth any rationale for discounting their opinions." (Doc. 14,
5    at 9.) On the other hand, Defendant contends the ALJ properly accorded the greatest
6    weight to Dr. Altman, an examining physician who made independent examination
7    findings. (Doc. 17, at 4.) Defendant alleges Dr. Altman's recommended RFC comported
8    with the weight of medical evidence, Plaintiff's treatment history, Plaintiff's activities of
9    daily living, and medical opinions from Drs. To and Vu, all of which are specific, legitimate
10   reasons to reject the other physicians' opinions. (Doc. 17, at 4-5.)

11                    i.      The ALJ's Duty to Evaluate Medical Evidence

12           The Ninth Circuit distinguishes between treating physicians, examining physicians
13   and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A
14   treating physician's opinion is entitled to greater weight than a non-treating physician and
15   an examining physician's opinion is entitled to greater weight than a non-examining
16   physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Ryan*, 528 F.3d at 1198; 20
17   C.F.R. § 404.1527(c)(1)-(6). Regardless of the source of the medical opinion, the ALJ
18   must consider the factors in 20 C.F.R. § 404.1527(c) to determine the weight to accord
19   such opinion.

20           The uncontradicted opinion of a treating physician is generally entitled to controlling
21   weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 303
22   Fed.App'x 565, 566-67 (9th Cir. 2008). However, "[i]f a treating physician's opinion is
23   contradicted by other substantial evidence, such as the opinion of an examining physician,
24   it may be rejected only for specific and legitimate reasons supported by substantial
25   evidence." *Aranda v. Comm'r Soc. Sec. Admin.*, 405 Fed.App'x 139, 140 (9th Cir. 2010).
26   The same standard applies if an examining physician's opinion is contradicted by another
27   physician. *Ryan*, 528 F.3d at 1198. "This is so because, even when contradicted, a treating
28   or examining physician's opinion is still owed deference and will often be entitled to the

11

greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal citations and quotations omitted).

An ALJ can satisfy the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (internal citations omitted).

Notably, "[t]he ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusionary and brief and is unsupported by clinical findings." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (internal citation omitted); *see also Batson*, 359 F.3d at 1195 (affirming ALJ's decision giving minimal weight to treating physician's opinion, in part, because opinion not supported with objective evidence, it was contradicted by other evidence, and opinion based on Plaintiff's subjective complaints); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (upholding ALJ's rejection of treating physician's opinion because it lacked objective evidence to support diagnoses).

When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996.) "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13; *see also Palmer v. Colvin*, 628 Fed.Appx. 507, 508 (9th Cir. 2016); *Marsh v. Colvin*, 792 F.3d 1170, 1172-1173 (9th Cir. 2015).

ii.    Analysis

As an initial matter, the ALJ did not ignore opinions from Drs. Tontz, Thompson, Wilson and Kaye. The ALJ acknowledged the Workers' Compensation opinions at various exhibits and he assigned partial weight to the opinions that allowed modified work with a five-pound lifting limit, but only as consistent with the RFC. (AR, at 22.) Next, the ALJ

cited to Workers' Compensation opinions at Exhibits 16F, 19F, 22F & 27F that indicated "some degree of ongoing limitations" but the ALJ explained he assigned "greater weight to SSA disability opinions in the file." (*Id.*) While it is true the ALJ could have specifically identified Drs. Tontz, Thompson, Wilson and Kaye by name, his failure to do so is not equivalent to ignoring these physicians' opinions. By referring to the Workers' Compensation physicians who opined and/or incorporated limitations placing Plaintiff on modified duty with a five-pound lifting limit, the ALJ implicitly addressed the opinions of Drs. Tontz, Thompson and Kaye. (AR, at 374, 406, 414, 723.); *see Murphy v. Comm'r Soc. Sec. Admin.*, 423 Fed.Appx. 703, 705 (if an ALJ implicitly rejects an examining physician opinion, the ALJ must provide specific and legitimate reasons for doing so) (citation omitted). By citing to Workers' Compensation opinions at Exhibits 16F (Dr. Kaye's QME Report), 19F (Dr. Kaye's Supplemental QME Report), 22F (Dr. Wilson's pain management re-evaluation notes) & 27F (Dr. Wilson's treatment notes), the ALJ addressed the opinions of Drs. Kaye and Wilson. (AR, at 717-726, 959-974, 1064-1163, 1802-1810.)

Contrary to Plaintiff's position, the ALJ did not disregard the opinions of Drs. Tontz, Thompson, Wilson and Kaye merely because these opinions were elicited for Workers' Compensation. As outlined below, the ALJ examined the medical evidence, determined the opinions of Drs. Altman, Do and Vu to be consistent with objective medical evidence, and thus, accorded more weight to these opinions than the Workers' Compensation opinions. AR, at 21-22; *see, Batson*, 359 F.3d at 1195; *Tonapetyan*, 242 F.3d at 1149; 20 C.F.R. § 404.1527(c)(4).

In examining the medical evidence, the ALJ acknowledged Plaintiff's diagnoses of lumbar spondylosis and degenerative changes in the spine in addition to Plaintiff's reports of ongoing pain. (AR, at 21.) However, the ALJ determined the overall medical evidence contradicted Plaintiff's allegations of complete disability. (*Id.*) The ALJ initially noted Plaintiff achieved some pain relief with "medical management, including lumbar epidural injection therapy" in addition to receiving "aquatic therapy, chiropractic care, acupuncture,

3:19-cv-00590-RBM

and physical therapy . . ." (*Id.*) Next, the ALJ noted inconsistencies in physical exam observations where some exams noted "a normal gait, good range of motion, full motor strength in the upper and lower extremities, and no neurological deficits" and other notes showed "an abnormal gait, lumbar tenderness to palpation, and limited range of motion." (*Id.*) The ALJ noted, "[o]verall, physical examinations noted that the claimant was in no acute distress." (*Id.*) The ALJ cited to a 2015 treatment note—post-dating the alleged onset of disability—where Plaintiff reported to be "exercising and trying to lose weight and doing well so far." (*Id.* (citing 940).)

Next, the ALJ evaluated Dr. Altman's consultative exam notes. (AR, at 21.) The ALJ cited Dr. Altman's observations of Plaintiff's inconsistent exam performance. *See supra* p. 9 (citing AR, at 21, 2027). The ALJ found treatment notes reporting Plaintiff's claim of "debilitating back pain" inconsistent with Plaintiff's activities. *Infra* p. 17. In addition to citing Plaintiff's conservative treatment, the ALJ cited Dr. Kaye's review of diagnostic imaging showing no gross abnormalities or neurological compromise that would likely cause serious functional deficits. (*Id.* at 21-22.)

As to the foregoing medical evidence, it is the ALJ's duty to resolve conflicts. *Garrison*, 759 F.3d at 1010. The ALJ accorded "significant weight" to Dr. Altman's opinion because it is "consistent with the overall treatment notes, physical examinations, diagnostic testing, medical management, and her overall activities of daily living[.]" (AR, at 22.) The ALJ also accorded "substantial weight" to the opinions of Drs. Do and Vu "based on longitudinal record" and because each opinion was "generally consistent with the overall medical evidence of record." (*Id.*); *see Salee v. Chater*, 94 F.3d 520, 522 ("the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings.") (citation omitted). In finding the opinions of Drs. Altman, Do and Vu consistent with the record as a whole, the ALJ offered specific, legitimate reasons for crediting these opinions over the opinions of Drs. Tontz, Thompson, Wilson and Kaye. 20 C.F.R. § 404.1527(c)(4); *Batson*, 359 F.3d at 1195; *Tonapetyan*, 242 F.3d at 1149.

Another basis for discounting a treating physician's opinion is clear inconsistency with the claimant's daily activities. *See Morgan*, 169 F.3d at 600-602. Here, the ALJ provided a specific, legitimate reason for according more weight to Dr. Altman's opinion, finding it consistent with Plaintiff's ability to exercise, drive and her unequivocal representation to Dr. Soliman that she can cook, clean, shop/run errands and take care of personal hygiene and finances. (AR, at 21-22). At a minimum, Plaintiff's ability to drive is clearly inconsistent with Dr. Wilson's opinion restricting Plaintiff from driving, thus the ALJ properly credited Dr. Altman's opinion over Dr. Wilson's opinion. (AR, at 47, 57, 499.)

In sum, the ALJ provided specific and legitimate reasons for crediting the opinion of Dr. Altman over the other medical opinions. Accordingly, Plaintiff is not entitled to remand on this ground.

## C.     The ALJ's Evaluation of Plaintiff's Subjective Claim of Impairment

Plaintiff contends the ALJ's decision should be reversed or remanded because the ALJ failed to properly evaluate Plaintiff's subjective claim of impairment. (Doc. 4, at 12.) Specifically, Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective allegations of impairment because the ALJ's entire analysis consists of "vague allusions to a lack of objective findings of deterioration in Plaintiff's condition, conservative treatment, and 'inconsistencies between her allegations and her admitted activities.'" (*Id.* at 13 (citing AR, at 23).) Defendant counters that the ALJ properly determined the medical evidence, Plaintiff's treatment history and Plaintiff's activities of daily living, did not support disabling limitations. (Doc. 17, at 7 (citing AR, 17, 20-24; 20 C.F.R. § 404.1529(c)(2)-(3)).)

### i.     The ALJ's Duty to Evaluate Subjective Claims of Impairment

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal citation omitted). First, the ALJ determines "whether there is objective medical evidence of an underlying impairment which could reasonably

15

be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations and citations omitted). If the claimant presents such evidence to satisfy the first step of the analysis, an ALJ can reject the claimant's subjective allegations of impairment "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see Lester*, 81 F.3d at 825; *Valentine*, 574 F.3d at 693. In addition to considering objective medical evidence, an ALJ is required to consider each of the factors set forth in 20 C.F.R. § 404.1529 to assess the credibility of pain symptoms. *Willyard v. Colvin*, 633 Fed.App'x 369, 370 (9th Cir. 2015). In weighing a claimant's credibility, the ALJ may consider the extent to which a claimant's allegations of disabling impairments are consistent with objective medical evidence, the claimant's daily activities and the claimant's ability to treat symptoms with medication. *Lingenfelter*, 504 F.3d at 1040; *see also Crosby v. Comm'r of Soc. Sec. Admin.*, 489 Fed.App'x 166, 168 (9th Cir. 2012) (it is proper to consider medical records to evaluate credibility of claimant's subjective statement of impairment).

"Generally, questions of credibility and resolution of conflicts in the testimony are functions solely for the agency." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (internal citation and quotations omitted). An ALJ may discredit a claimant's subjective statements of impairment, but the ALJ must "identify what testimony is not credible and what evidence undermines the claimant's complaints." *See Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (finding inconsistencies in claimant's reported symptoms and activities supported ALJ's decision discrediting claimant's subjective complaints of impairment); *see also Dodrill v. Shaiala*, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it).

ii. Analysis

Here, the ALJ's decision contains clear and convincing reasons for rejecting Plaintiff's subjective allegations of impairment.

In pointing to treatment records and examination findings as outlined in Section B, subsection ii, the ALJ offered a clear and convincing reason to reject Plaintiff's subjective

16

allegation of impairment. *Supra* pp. 13-14; (AR, at 411 (Plaintiff in no acute distress), 627, 631 (normalized gait after lumbar injection with Dr. Wilson), 2027 & 2029 (Dr. Altman's normal findings), 2057 (review of diagnostic studies showing no gross abnormalities)); *Valentine*, 574 F.3d at 693; *see* 20 C.F.R. § 404.1529(c)(2) (objective medical evidence may be considered in making reasonable conclusions about the intensity, persistence and effect that claimant's symptoms have on his or her ability to work).

Additionally, the ALJ found Plaintiff's subjective allegations of debilitating back pain contradicted by Plaintiff's admitted activities of aquatherapy, limited driving, exercising, cooking, cleaning, shopping, running errands and handling personal hygiene and financial chores. (AR, at 21; *compare*, AR, at 648 (physical therapy records documenting debilitating back pain) *with* 713 (Plaintiff's report of daily activities to Dr. Soliman).) This inconsistency constitutes another clear and convincing reason to reject Plaintiff's allegations of impairment. *Lingenfelter*, 504 F.3d at 1031; *see also Valentine*, 574 F.3d at 693 (where activities suggest some difficulty functioning, there may be grounds to discredit claimant's testimony when activities contradict claims of a totally debilitating impairment).

Finally, Plaintiff's ability to continue working three years after her workplace incident is another clear and convincing reason to discount Plaintiff's subjective allegation of impairment. *Jourdan v. Comm'r of Soc. Sec.*, 426 Fed.App'x 499, 500 (9th Cir. 2011) (unpublished) (ten-year work history following accident and conservative treatment of symptoms constituted substantial evidence to support ALJ's adverse credibility determination).

In considering the aforementioned objective medical evidence, Plaintiff's reported activities and the three-year work history following the workplace incident, the ALJ provided clear and convincing reasons for discrediting Plaintiff's subjective claims of impairment. *Berry*, 622 F.3d at 1234; *Lingenfelter*, 504 F.3d at 1040. Accordingly, Plaintiff is not entitled to remand on this ground.

/ / /

17

## VII.  CONCLUSION

Based on the foregoing, the Court finds the ALJ's decision is supported by substantial evidence.  Accordingly, **IT IS HEREBY ORDERED**:  (1) Plaintiff's request for remand is **DENIED**; (2) Defendant's Cross-Motion for Summary Judgment is **GRANTED**; and (3) the decision of the Commissioner is **AFFIRMED**.  The Clerk of Court shall enter Judgment accordingly.

**IT IS SO ORDERED**.

DATE: January 22, 2020

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

3:19-cv-00590-RBM